IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**MARTY S. HAMILTON**                                                     **PLAINTIFF**

**V.**                                            **CIVIL ACTION NO. 3:16CV865-LRA**

**NANCY A. BERRYHILL, ACTING**
**COMMISSIONER OF SOCIAL SECURITY**                         **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Marty S. Hamilton appeals the final decision denying his applications for disability insurance benefits (DIB) and supplemental security income (SSI). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the Court finds that the decision should be remanded.

On January 22, 2013, Hamilton filed applications for DIB and SSI alleging a disability onset date of October 12, 2011, due to torn muscles, hip muscle pain, sciatica nerve damage, and arthritis. He was 50 years old on his alleged onset date, and had a high school education. He had previous work experience in a furniture store, as a school bus driver, and as a landscape worker. Following agency denials of his applications, an Administrative Law Judge ("ALJ") rendered an unfavorable decision finding that he had not established a disability within the meaning of the Social Security Act. The Appeals

Council denied Plaintiff's request for review. He filed the instant appeal on November 3, 2016, but he has since passed away.[1]

At step one of the five-step sequential evaluation,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. At steps two and three, the ALJ found that Plaintiff's degenerative disc disease, acute infarct, osteoarthritis, sciatica, status post amputation of right foot/toe, coronary artery disease (CAD), peripheral vascular disease (PVD), and diabetes mellitus were severe, but did not meet or medically equal any listing. At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work except he can:

> lift/carry 20 pounds occasionally and 10 pounds, frequently, stand/walk for two hours for 20 minutes at a time, and sit for six hours for two hours at a time during an eight-hour workday. He can occasionally stoop and climb but no crouching, kneeling, or crawling. The claimant can push/pull less than 10 pounds with the lower extremities. Due to occasional lower extremity numbness, he cannot feel texture and cannot operate foot controls. The claimant would use a cane to walk for more than 10 minutes.[3]

Based on vocational expert testimony, the ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, he could perform work as a charge account clerk, merchandise marker, and cashier.

---

[1] ECF No. 18, p. 150. Counsel for Plaintiff has advised that Hamilton died on January 15, 2018.

[2] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[3] ECF No. 18, p. 128.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 285, 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## Discussion

Plaintiff contends that this case should be reversed or alternatively remanded for several reasons. He argues that the ALJ failed to find chronic skin infections were a separate severe impairment at step two; failed to support his step three finding with substantial evidence; erred in finding that Plaintiff can perform other jobs in the economy; failed to fully develop the record; and, failed to change his age category. He also asserts the Appeals Council erred in failing to review new and material evidence. For the reasons that follow, this case is remanded for further administrative review.

Plaintiff's medical records reflect a history of chronic skin infections caused by complications of coronary artery disease, peripheral vascular disease, and uncontrolled

diabetes mellitus. At the administrative hearing, Plaintiff testified that, *inter alia*, he cannot feel his feet because of diabetic neuropathy, and has difficulty with his right leg because of pulled muscles and a torn sciatic nerve. He also strains to pick up his 30-pound grandson; cannot perform household chores for any length of time; can only stand between 10-15 minutes at a time; walks approximately 100 feet before his hip begins to hurt; and, uses a cane for balance when he walks. In determining that Plaintiff can perform a reduced range of light work, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce some of his alleged symptoms, but his testimony regarding the intensity, persistence, and limiting effects was not fully credible. [4]

As his first point of error, Plaintiff argues that the ALJ failed to find that his chronic skin infections were a severe impairment at step two. The Commissioner counters that this argument is moot because the ALJ ultimately found Plaintiff's diabetes mellitus, "which encapsulates all of his objectively verifiable skin issues" was a severe impairment. Generally, the failure to make a severity finding at step two is not grounds for reversal or remand when the ALJ finds other severe impairments and proceeds with the sequential evaluation. *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (failure to make a severity finding at step two not a basis for remand where ALJ proceeded to later steps of the analysis). However, throughout the disability determination process, the ALJ is required to consider the combined effects of any impairments "without regard to

---

[4] ECF No. 18, 137-48.

4

whether any such impairment, if considered separately, would be of sufficient severity." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (quoting 20 C.F.R. § 404.1523).

A review of the ALJ's decision in this case reflects that the ALJ summarily concluded at step three that the claimant did not meet or equal a listing. The Court chiefly considers Plaintiff's argument that the ALJ failed to evaluate his chronic skin infections to determine whether it met Listing 8.04 for Skin Disorders. The ALJ's step-three analysis was as follows:

> None of the claimant's physical impairments has the required attendant findings as any impairment contained in Appendix 1. The claimant's heart condition does not have the same attendant findings for any impairment contained in section 4.00 et. seq. of Appendix 1. Specific consideration has been given to Listings 1.04 and 4.12. Diabetes mellitus is no longer a valid impairment for adults but the effects of diabetes have been taken into consideration (SSR-14-2p).[5]

While an ALJ is not required to conduct a point-by-point discussion, such statements thwart meaningful judicial review. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Although diabetes mellitus is no longer a listing impairment for adults, the regulations direct an ALJ to evaluate impairments resulting from endocrine disorders, such as diabetes mellitus, "under the listing for the other body system affected, if any." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 9.00. *Christiansen v. Colvin*, 5:14-CV-1314, AKK, 2015 WL 875427, at *3 (N.D. Ala., Mar. 2, 2015) ("To replace the original listing 9.08, the revised listing 9.00 required claimants suffering from an endocrine disorder, including diabetes, to show that their illness caused a listed condition for another body

---

[5] ECF No. 18, p. 128

5

system in order to satisfy Step Three of the SSA's five-part sequential analysis."). Listing 9.00B (5)(a) (ii) specifically provides that diabetic complications resulting from chronic hyperglycemia, for which there is undisputed evidence of in this case, should be evaluated accordingly:

> [W]e evaluate diabetic peripheral neurovascular disease that leads to gangrene and subsequent amputation of an extremity under 1.00; diabetic retinopathy under 2.00; coronary artery disease and peripheral vascular disease under 4.00; diabetic gastroparesis that results in abnormal gastrointestinal motility under 5.00; diabetic nephropathy under 6.00; ***poorly healing bacterial and fungal skin infections under 8.00;*** diabetic peripheral and sensory neuropathies under 11.00; and cognitive impairments, depression, and anxiety under 12.00.

20 C.F.R. Part 404, Subpart P, App. 1, § 9.00B(5)(a)(ii).

In the instant case, Plaintiff contends the ALJ erred at step three by failing to evaluate his chronic skin infections under Listing 8.00 for Skin Disorders, specifically section 8.04. To meet Listing 8.04, a claimant must have "[c]hronic infections of the skin or mucous membranes, with extensive fungating or extensive ulcerating skin lesions that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 8.04. The agency assesses the severity of skin disorders by examining the extent of skin lesions, the frequency of flare-ups, extent of treatment, and how it affects the claimant's ability to function. The regulations define "extensive skin lesions" as follows:

> Extensive skin lesions. Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious limitation. Examples of extensive skin lesions that result in a very serious limitation ***include but are not limited to***:

6

        a.        Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.

        b.        Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.

        c.        Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

*Id.* § 8.00(C)(1)(a)-(c) (emphasis added).

Plaintiff argues that this listing is satisfied because the medical evidence documents treatment for chronic skin infections throughout 2011, 2012, 2014, and 2015. He specifically highlights an ulcerating skin lesion on his right, fifth toe that was first treated in November 2011, and persisted through December, February, March, April, August, and September 2012, despite antibiotic infusions and hyperbaric oxygen therapy, before ultimately resulting in the amputation of his toe.

At step two, the ALJ discussed the medical evidence showing that Plaintiff had a non-healing ulcerating skin lesion that persisted from November 2011 through September 2012, well over the 3-month period required by Listing 8.04. The ALJ also acknowledged that "the wound failed to completely heal despite multiple rounds of antibiotics and debridement." Yet, the ALJ made no mention of Listing 8.04, or whether its criteria were satisfied.[6] Specific consideration was expressly given only to Listings

---

[6] *But see Hurst v. Colvin,* 639 F. App'x. 1018, 1021–22 (5th Cir. 2016) ("Although the ALJ failed to cite section 8.05 in her decision, she did cite considerable evidence that bolstered her conclusion that

7

1.04 (Disorders of the Spine) and 4.12 (Peripheral Arterial Disease). And, while these listings were identified and relevant medical evidence described, the ALJ did not explain how he reached the conclusion that these listings were not met, in particular Listing 4.12, which Plaintiff also challenges. The mention of diagnosis and symptoms associated with an impairment does not equate to an evaluation of the intensity, persistence, and limited effects.

In *Audler v. Astrue*, the ALJ summarily determined that the claimant's impairments did not meet or equal any of the impairments in the Listings, but she did not identify which Listing the claimant failed to meet or explain how she reached that conclusion. 501 F.3d at 448. The *Audler* Court noted that because the ALJ offered nothing to support her conclusion at this step, it could not determine whether the decision was based on substantial evidence.

Such is the case here. Despite medical evidence documenting skin infections, the record is devoid of any analysis by the ALJ or a medical expert as to whether Listing 8.04 criteria were met. A state agency consultant reviewing the medical evidence in December 2013, indicated that there were "no listings applicable" to Plaintiff.[7] This opinion, which was generated before Plaintiff's subsequent infections and second amputation, was not adopted entirely but it was assigned some weight. Similarly, the ALJ's adverse credibility determination and residual functional capacity assessment are

---

Hurst 'does not have an impairment or combination of impairments that meets or medically equals the severity' of an impairment listed in Appendix 1.").

[7] ECF No. 18, p. 173.

largely based on the findings of a consultative examination conducted in April 2013, showing Plaintiff had no difficulty ambulating. Based on this evidence and observations at the administrative hearing, the ALJ found Plaintiff's complaints credible only "to the extent that he requires a cane if walking for longer than 10 minutes." However, the ability to ambulate is one example of qualifying severity under 8.00 and 8.04.

Generally, "[t]he degree of severity which might potentially meet or equal the criteria of Listing 8.04 is not intuitively obvious to a judicial reviewer such as this court, and the Commissioner has the expertise to explain the degree of severity which is required by that Listing." *Kesinger v. Colvin*, No. Civ. Action 14-1030-JWL, 2015 WL 471274, at *6 (D. Kan., Feb. 4, 2015). Here, however, the Commissioner does not address whether Listing 8.04 is satisfied, except to say that the ALJ was under no obligation to consider it because Plaintiff's amputations were due to osteomyelitis, not a skin infection. But by the Commissioner's own admission, osteomyelitis is an infection of the bone that can be caused by complications from diabetic skin disorders, and the "medical evidence clearly indicates that Plaintiff's diabetes mellitus caused his skin's issues."[8] The ALJ acknowledged, in fact, that Plaintiff "subsequently developed osteomyelitis of the right fifth MP joint requiring amputation of the toe in August 2012" after multiple rounds of antibiotics and debridement failed to resolve his 2011 skin lesion. Medical records from April 2014 also reflect a "chronic wound concern for [osteomyelitis] on [his] right great toe, and "[e]arly osteomyelitis of [the] distal phalanx

---

[8] ECF No. 29, p. 8.

of [the] right great toe due to diabetic foot ulcer." The Commissioner does not cite any medical evidence to the contrary.[9]

An ALJ's failure to adequately explain his step-three finding does not require remand unless it affects the claimant's substantial rights. *Audler,* 501 F.3d at 449*; see also Goffney ex rel. B.L. v. Astrue*, 4:09-CV-161, DPJ-FKB, 2011 WL 1297184, at *7 (S.D. Miss., Mar. 31, 2011). "A claimant's substantial rights are affected at Step Three when he demonstrates that he meets, ***or at least appears to meet***, the requirements for a listing." *Strong v. Astrue*, No. 10-1406, 2011 WL 7394717, at *3 (W.D. La., Dec. 23, 2011) (emphasis added). Here, Plaintiff appears to have met his burden of showing chronic infections lasting 3 or more months despite treatment. Absent any analysis by the ALJ or a medical expert, the Court is simply unable to conduct an informed judicial review as to whether the severity criteria were met.

Against this backdrop, the Court turns to Plaintiff's contention that the Appeals Council erred in failing to consider new evidence after the ALJ's decision. As background, Hamilton was represented by a non-attorney representative in proceedings before the ALJ. He did not submit a medical source statement or opinion from a treating physician during that time frame. Upon receiving the ALJ's written opinion denying benefits, Plaintiff retained counsel, who then procured a medical source statement from Dr. Christina Bowles, and submitted it to the Appeals Council, along with other medical records. The medical source statement, dated December 4, 2015, indicates that Plaintiff

---

9 ECF No. 18, pp. 130, 641, 645.

became an established patient in May 2015. It also states, *inter alia*, that Plaintiff has pain in his right leg and hip with ambulation, and minimal sensation in both feet. The pain is "particularly worse in [the] right foot and hip, [and] daily aggravated with ambulation, and sitting for long periods." She also indicates that Plaintiff requires an assistive device while walking.

The regulations provide that "[w]hen confronted with new and material evidence, the Appeals Council 'shall evaluate the entire record including the new and material evidence. . . . It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Whitehead v. Colvin*, 820 F.3d 776, 780 (5th Cir. 2016) (quoting 20 C.F.R. § 404.970(b)). The Appeals Council considers additional evidence only if it is new, material, and relates to the period on or before the ALJ's decision. 20 C.F.R. § § 404.970(b), 404.976 (B).[10] Once considered, the new evidence becomes part of the administrative record upon which the final decision is based, and a reviewing court must determine whether the denial of benefits is supported by substantial evidence, in light of the new evidence. *Hardman v. Colvin,* 820 F.3d 142, 150 (5th Cir. 2016). The Fifth Circuit has held that "even when new and material evidence submitted to an Appeals Council is 'significant' and 'casts doubt on the soundness of the ALJ's findings,' the

---

[10] "Evidence that was 'not in existence at the time of the administrative . . . proceedings meets the 'new' requirement for remand. . . . ,'" *Hunter v. Astrue*, 283 F. App'x. 261, 262 (5th Cir. 2008), while material evidence must "relate to the time period for which benefits were denied," and it may not "concern evidence of a later-acquired disability, or of the subsequent deterioration of a previously non-disabling condition." *Haywood v. Sullivan*, 888 F.2d 1463, 1471-72 (5th Cir. 1989) (quoting *Johnson v. Heckler,* 767 F.2d 180, 183 (5th Cir. 1985)). There must also be a reasonable probability that the new evidence would change the outcome of the case.

11

Appeals Council does not err in refusing to review the claimant's case ***if it can be determined*** that substantial evidence nevertheless supports the ALJ's denial of benefits. *Id*. at 151 (emphasis added) (quoting *Sun v. Colvin*, 793, F.3d 502, 511-12 (5th Cir. 2015). The Court cannot make such a determination here.

Unlike the other records submitted by Plaintiff, the Appeals Council did not contest the newness or materiality of Dr. Bowles's medical source statement in denying Plaintiff's request for review. The evidence is not cumulative of what is already in the record, and although dated December 4, 2015, the treating relationship encompasses the period before the ALJ's decision. *Johnson v. Berryhill*, No. 4:16-CV-0214-O-BL, 2017 WL 2964882, at *6 (N.D. Tex., July, 26, 2017) ("The fact that evidence relates to a period after the ALJ decision does not preclude it from also relating to the earlier period."). Dr. Bowles's medical source statement is also the only opinion from a treating physician of record, and the limitations assigned therein cast doubt on both the ALJ's adverse credibility determination and residual functional capacity assessment. *Compare Whitehead*, 820 F.3d at 780 ("[T]he newly submitted medical records largely confirm the evidence already contained in the record."). Standing alone, this doubt is not enough to warrant reversal or remand. But when considered in light of the ALJ's failure to consider Listing 8.04, the Court is unable to determine, from a review of the record as a whole, if substantial evidence supports the ALJ's decision. *Sun*, 793 F.3d at 504. Dr. Bowles's report so dilutes the record "that a weighing of new and old evidence is required" to assess the degree of limitations during the relevant time period. *Jones v. Astrue*, 228 F. App'x 403, 407 (5th Cir. 2017).

To be clear, the undersigned has not reweighed the evidence and does not suggest that Plaintiff is or is not disabled. In fact, further analysis on remand may very well result in the same conclusion, given the ALJ's adverse credibility determination and residual functional capacity assessment. On this record, the Court cannot confidently conclude that the ALJ's errors at step three did not affect the analyses at the subsequent steps of the evaluation. Accordingly, this case is remanded for further proceedings consistent with this opinion. On remand, the ALJ should set forth with greater specificity his findings with regard to the listings, taking care to link his findings to specific evidence. Because this case is remanded for further development on these grounds, the Court need not consider whether it should be remanded on other grounds raised herein.

SO ORDERED on May 3, 2018.

s/ Linda R. Anderson  
UNITED STATES MAGISTRATE JUDGE